**FEDERAL ELECTION COMMISSION, Petitioner,**

v.

**William FRANKLIN, a/k/a Billy A. Franklin, Respondent.**

**Civ. A. No. 89–324–N.**

United States District Court, E.D. Virginia, Norfolk Division.

July 26, 1989.

Lawrence M. Noble, Gen. Counsel, Richard B. Bader, Associate Gen. Counsel, Ivan Rivera, Asst. Gen. Counsel, Lisa E. Klein, Atty., Federal Election Com'n, Michael Allen Dymersky, Federal Election Com'n, Washington, D.C., for petitioner.

William R. O'Brien, Hudgins, Ege & O'Brien, P.C., Virginia Beach, Va., for respondent.

## MEMORANDUM OPINION AND ORDER

DOUMAR, District Judge.

The Federal Election Commission (FEC or Commission) petitions the Court for a

judicial order requiring respondent Franklin to fully comply with an FEC administrative order to submit written answers to certain interrogatories. The FEC administrative order was issued to Franklin as part, to date the only part, of an FEC investigation into possible violations of the Federal Election Campaign Act of 1971, as amended (FECA or Act), 2 U.S.C. sections 431 *et seq.*, by an unknown person or entity during the 1988 federal senatorial campaign in Virginia. During that campaign, rumors apparently circulated that former governor and at that time United States Senate candidate Charles Robb had at one time associated with individuals in Virginia Beach, Virginia allegedly implicated in drug use or in drug trafficking. At the same time, the news media reported that private investigator Franklin was conducting an investigation on behalf of an unidentified individual to determine whether the rumors linking Robb to drug users were true.

The FEC's involvement in this matter began when the Robb for Senate Committee filed a complaint with the FEC in August 1988 alleging its belief that the unknown employer of Franklin had violated the campaign contributions or expenditure reporting requirements of the FECA. After finding reason to believe, by a vote of four to two, that an unknown person or persons had violated the political committee reporting requirements contained within 2 U.S.C. section 434, the FEC ordered Franklin to provide written answers to some nineteen questions concerning the nature and purpose of his investigation and on whose behalf the investigation was undertaken. Franklin answered certain of the questions but refused to identify on whose behalf the investigation was being conducted, or for what purpose, invoking the attorney-client privilege.

A few months later, the FEC filed a petition with this Court, pursuant to 2 U.S.C. section 437d(b), for a judicial order requiring Franklin to answer all of the questions propounded to him by the FEC.[1] By order dated April 24, 1989, the Court ordered Franklin to appear before the Court on May 25, 1989, to show cause, if any, why he should not be required to comply with the FEC's administrative order. The April 24 order also directed Franklin to file and serve any motions or other materials in opposition to the FEC's petition within fifteen days of the date of that order.

On May 24, 1989, Franklin filed and served a motion for summary judgment seeking dismissal of the FEC petition. On May 25 the show cause hearing was held. The FEC subsequently responded in opposition to Franklin's motion for summary judgment. Although the FEC pointed out in its opposing brief that Franklin's motion for summary judgment was untimely, the FEC did not move that it be stricken or suggest that the FEC had suffered any prejudice as a result of its untimeliness. The FEC fully responded to the motion. Accordingly, while not condoning or excusing its untimeliness, the Court will not strike Franklin's motion for summary judgment.

Based on the reasons that follow, the Court finds that Franklin must fully comply with the FEC administrative order and provide the answers to the questions propounded to him by the FEC. The Court also finds that Franklin's motion for summary judgment lacks merit and must be denied. Finally, in order to protect the privacy interest of the unknown employer and to ensure that the confidentiality requirements of the FECA are observed, the Court is ordering that the identity of Franklin's client in the Robb investigation may only be disclosed to specified individu-

---

**1.** The FEC is statutorily empowered to "require by special or general orders, any person to submit, under oath, such written ... answers to questions as the Commission may prescribe...." 2 U.S.C.A. § 437d(a)(1) (1985). If the person to whom such questions are addressed does not comply with the FEC's administrative order,

[U]pon petition by the Commission, any United States district court within the jurisdiction of which any inquiry is being carried on may ... issue an order requiring compliance. Any failure to obey the order of the court may be punished by the court as a contempt thereof. *Id.* § 437d(b).

als at the FEC, and to no one else, until such time as a formal enforcement action in this matter is commenced or disclosure is mandated by operation of law.

### A. *Statutory Background*

#### 1. Reporting In–Kind Contributions.

Section 304 of the FECA, 2 U.S.C. section 434, requires political committees [2] to file reports of receipts and disbursements with the FEC. Under section 304 and FEC regulations, a political committee's report must list each person, other than a political committee, who makes a "contribution," either singly or in aggregate, to the reporting committee in excess of $200 per calendar year. 2 U.S.C.A. § 434(b)(3) (1985); 11 C.F.R. § 104.3(a)(4)(i) (1988). A "contribution" under the FECA includes "the payment by any person of compensation for the personal services of another person which are rendered to a political committee without charge for any purpose." 2 U.S.C.A. § 431(8)(A)(ii) (1985).

In this case, if Franklin's fees for investigating Senator Robb were paid for by an individual or group in consultation or coordination with a political committee required to file a disclosure report with the FEC, the committee would be obligated to report the payment for Franklin's services as a contribution if that payment exceeded $200 during a calendar year. A failure by the committee to report that contribution would constitute a violation of the FECA.

#### 2. FEC Enforcement Process.

Under the FECA, any person who believes that a violation of the Act has occurred may file a complaint with the FEC. 2 U.S.C.A. § 437g(a)(1) (1985). The complaint must be in writing, signed, and sworn to under penalty of perjury by the person filing the complaint, and must be notarized. *Id.* In addition to these statutory requirements, FEC regulations also provide that a complaint "should clearly identify as a respondent each person or entity who is alleged to have committed a violation" and "should contain a clear and concise recitation of the facts which describe a violation of a statute or regulation over which the Commission has jurisdiction. 11 C.F.R. §§ 111.4(d)(1); (d)(3) (1988). Although the FECA prohibits the FEC from conducting any investigation or from taking any other enforcement action solely on the basis of a complaint from a person whose identity is not disclosed to the Commission, 2 U.S.C.A. § 437g(a)(1) (1985), neither the statute nor the FEC regulations address the situation, as in this matter, where the identity of the respondent to a complaint is not known (hereinafter referred to as a John Doe complaint).

Within five days after receipt of a complaint the FEC must notify, in writing, "any person alleged in the complaint to have committed ... a violation." *Id.* Before the Commission conducts any vote on the complaint other than a vote to dismiss, any person so notified must be given fifteen days after notification to demonstrate to the FEC, in writing, that no action should be taken against such person on the basis of the complaint. *Id.*

The next steps in the FEC's enforcement process are described by the FECA as follows:

> If the Commission, upon receiving a complaint ... determines, by an affirmative vote of 4 of its [6] members, that it has reason to believe that a person has committed, or is about to commit, a violation of ... [the FECA], the Commission

---

**2.** The FECA defines the term "political committee" as:

> (A) any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year; or
>
> (B) any separate segregated fund established under the provisions of section 441b(b) of this title; or

> (C) any local committee of a political party which receives contributions aggregating in excess of $5,000 during a calendar year, or makes payments exempted from the definition of contribution or expenditure as defined in paragraphs (8) and (9) aggregating in excess of $5,000 during a calendar year, or makes contributions aggregating in excess of $1,000 during a calendar year or makes expenditures aggregating in excess of $1,000 during a calendar year.

2 U.S.C.A. § 431(4) (1985).

... shall notify the person of the alleged violation. Such notification shall set forth the factual basis for such alleged violation. The Commission shall make an investigation of such alleged violation, which may include a field investigation or audit, in accordance with the provisions of this section.

*Id.* § 437g(a)(2).

If as a result of the investigation the FEC general counsel recommends to the Commission to proceed to a vote on whether there is probable cause to believe that the respondent has violated or is about to violate the FECA, the general counsel must notify the respondent of this recommendation. *Id.* § 437g(a)(3). The respondent must be given a copy of the general counsel's brief to the Commission and an opportunity to file a brief in opposition, which must be considered by the Commission before taking the probable cause vote. *Id.* If by an affirmative vote of four of its members the Commission makes a probable cause finding, the FEC must attempt to resolve the matter through conciliation. *Id.* § 437g(a)(4). If conciliation efforts are unsuccessful, the FEC may, upon an affirmative vote of four of its members, institute a civil enforcement action in U.S. district court. *Id.* § 437g(a)(6). If, by an affirmative vote of four members, the Commission determines there is probable cause to believe that a violation of the FECA was knowing and willful, the FEC may refer the apparent violation to the Attorney General of the United States for possible prosecution under the FECA's criminal provisions. *Id.* § 437g(a)(5)(C); see *id.* § 437g(d)(1). Finally, if at any point the FEC dismisses a complaint, the person who filed the complaint may file an action for judicial review of the dismissal. *See id.* § 437g(a)(8); *Orloski v. Federal Election Commission,* 795 F.2d 156 (D.C.Cir.1986).

B. *Legality of the FEC Investigation*

 Respondent Franklin's first argument against this Court enforcing the FEC order is that the FEC lacks subject matter jurisdiction as a matter of law over the Robb for Senate complaint because with the identity of the respondent to that complaint unknown, the FEC cannot comply with the mandatory notice and opportunity to respond requirements contained in 2 U.S.C. section 437g(a). To date, the FEC has only been able to send the required notices to Franklin rather than directly to the unknown respondent. Franklin asserts that these specific "due process" requirements demonstrate that Congress neither anticipated nor authorized John Doe complaints.

The FEC concedes, reluctantly, that Franklin is not a respondent to the Robb for Senate complaint. The FEC points out, however, that the Commission has construed the FECA for many years to permit investigations of unknown violators. The FEC argues that the notice and opportunity to respond requirements of section 437g(a) have been met to the extent possible in this matter with an unknown respondent and that any possible defect in notice has been cured by the unknown employer of Franklin having received actual notice. The FEC's claim of actual notice is based upon a statement by Franklin in his answer to the Robb for Senate complaint that Franklin's employer requested him to invoke the attorney-client privilege with regard to the employer's identity and to any conversations or work product. Answer of Billy A. Franklin, MUR 2673, at ¶ 11.

The Court concludes that the FEC's inability to directly notify the unknown respondent under section 437g(a) does not divest the Commission of jurisdiction over the investigation of the FECA violation alleged in the Robb for Senate complaint on which the FEC made a reason to believe determination. The Court need not determine the legality of FEC John Doe investigations in general. On the facts of this case, the Court finds that the FEC met the notice requirements contained within section 437g(a) by providing notice and opportunity to respond to the unknown respondent through attorney Franklin.

Throughout the course of these proceedings, Franklin has maintained that his investigation was undertaken as a part of the legal services that he provided to his unknown client. Franklin has also asserted

that his attorney-client relationship with the unknown client is ongoing. While it could conceivably turn out that this is not the case, the due process rights of the unknown respondent would nevertheless remain protected by the numerous statutory steps in the FEC enforcement process.[3]

In addition to protecting the due process rights of respondents, the notice and opportunity to respond requirements of section 437g(a) operate as a check on the investigatory power of the FEC. *See Federal Election Commission v. Machinists Non–Partisan Political League*, 655 F.2d 380, 387–388 (D.C.Cir.) [hereinafter *MNPL*] (unlike federal agencies such as the FTC, SEC, or the Administrator of the Department of Labor's Wage and Hour Division, the FEC has no roving statutory functions and mere "official curiosity" is insufficient as the basis for FEC investigations), *cert. denied,* 454 U.S. 897, 102 S.Ct. 397, 70 L.Ed.2d 213 (1981).

The conduct of the FEC "investigation" following its reason to believe finding is somewhat anomalous. In the answers to the FEC interrogatories that Franklin did submit, Franklin responded that the person or persons for whom he was conducting the investigation were not: the Virginia Republican Party or any party organization; Maurice A. Dawkins; the Committee to Elect Maurice Dawkins to the U.S. Senate; an individual associated with the Dawkins campaign; an individual associated with the state or national Republican Party; a corporation or partnership including corporations; a union; a political committee; a government contractor; or a partnership. Written Answers to Order of Oct. 28, 1988 at ¶ 2 (incorporating question No. 2 attached to FEC Order of Oct. 28, 1988). According to its counsel, as of May 25, 1989, the FEC had not interviewed or questioned any political organization or figure of any kind concerning the possible violation of the FECA in this matter. Indeed, no questions have been addressed to anyone other than Franklin. While this con-

duct could suggest that the FEC is more interested in determining the identity of Franklin's employer than in determining whether a violation of the FECA has occurred, this conduct could also be an efficient method for the FEC to determine whether the investigation should continue or whether the Robb for Senate complaint should be dismissed.

Upon receiving the Robb for Senate complaint, the FEC was statutorily obligated to determine whether it should have been dismissed or whether it supported a reason to believe finding. After the complaint was filed, the FEC followed the notice and opportunity to be heard requirements of section 437g(a) through Franklin, the only method known to the FEC to provide notice to his unidentified client. There has been no showing or even suggestion of bad faith on the part of the FEC in launching the investigation, such as it is. *Cf. EEOC v. Shell Oil Co.*, 466 U.S. 54, 66 n. 16, 104 S.Ct. 1621, 1629 n. 16, 80 L.Ed.2d 41 (1984) (courts have uniformly held that, in the absence of proof of bad faith on the part of the EEOC, EEOC failure to notify an accused employer within ten days of the filing of a discrimination charge as required by Title VII does not bar subsequent suit against the employer). Without such a showing, this Court must conclude that the FEC is conducting a good faith investigation.

### C. *Sufficiency of the Complaint*

■ Franklin's next claim is that the FEC investigation is unlawful because the complaint that launched the investigation is inadequate under the requirements of the FECA and of the FEC's regulations. This claim also fails.

Franklin first argues that the Robb for Senate complaint fails to identify the respondent. As noted earlier, the FEC regulations state that a complaint "should clearly identify as a respondent each person or entity who is alleged to have committed a violation...." 11 C.F.R. § 111.4(d)(1)

---

**3.** Franklin's unidentified client could have also moved this Court to quash the FEC order as John Doe, preserving anonymity. See, e.g.,

*United States v. (Under Seal),* 774 F.2d 624 (4th Cir.1985), *cert. denied, Doe v. United States,* 475 U.S. 1108, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986).

(1988). The FEC regulations require substantial compliance with the technical requirements for complaints before going forward with the FEC enforcement process based upon a particular complaint. *See id.* § 111.5.

The Robb for Senate complaint identified John Doe, Employer of William Franklin, as the respondent. Robb for Senate Complaint at 1. The complaint makes plain that the particular client of Franklin named as the respondent is the purported client on whose behalf Franklin was conducting his investigation into Senator Robb's alleged social activities. While the complaint did not identify the respondent by name, the complaint clearly identified the employer of Franklin in the Robb investigation as the respondent. Franklin's argument that the complaint must fail because it did not identify by name the person or entity, unknown to the complainant, alleged to have committed an identified violation of the FECA, is unavailing.

So too is Franklin's argument that the Robb for Senate complaint fails because it does not contain "a clear and concise recitation of the facts which describe a violation of a statute or regulation over which the Commission has jurisdiction...." *Id.* § 111.4(d)(3). While the complaint does not present a complete factual and legal account of a violation of the FECA by the unknown respondent, such an account is not required.

Filing a complaint with the FEC places the FEC on notice that the complainant believes that the respondent has violated the FECA, commences the FEC enforcement process, and authorizes FEC investigation. *Cf. EEOC v. Shell Oil,* 466 U.S. at 68–69, 104 S.Ct. at 1631. Filing a complaint is the first step down a road that may prove to be short or that may prove to be long. It is, however, only the first step.

The Robb for Senate complaint alleged that Franklin was investigating Senator Robb's social activities, and that this investigation was occurring during an election

campaign in which Robb was a candidate for the United States Senate. The complaint related that Franklin had stated that he had received a handsome retainer for the investigation and that his expenses were being paid. While Franklin had not identified his employer, the complaint alleged, Franklin had purportedly stated that it was someone "interested in good government." Robb for Senate Complaint at 2. Based on these facts, the complaint alleged possible violations of the independent expenditure reporting requirements of 11 C.F.R. section 109.2 and the campaign expenditure or in-kind contribution reporting requirements of 11 C.F.R. part 104.[4] The only missing fact with relation to the FEC's reason to believe finding of an in-kind contribution reporting violation is whether or not Franklin's unknown employer consulted or coordinated with a political committee concerning Franklin's investigation. That fact is unknown. Its omission from the Robb for Senate complaint is not fatal to the FEC's investigation.

**D. *Judicial Review of the Reason to Believe Finding***

 Franklin's next claim is that the FEC's reason to believe finding—its decision to investigate—is arbitrary, capricious, and contrary to law. This claim presupposes that the FEC's reason to believe finding is judicially reviewable. On the facts of this case, however, the Court finds that the FEC's reason to believe finding is not ripe for judicial review.

Absent a demonstration of injury or hardship that would result from withholding judicial review of a preliminary agency action, agency actions are not generally ripe for judicial review until they constitute "final agency action" within the meaning of section 10 of the Administrative Procedure Act, 5 U.S.C. section 704. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). In FEC enforcement actions, reason to believe findings have been judicially reviewed during

---

**4.** The FEC made a reason to believe determination only with regard to 2 U.S.C. section 434(b), from which the political committee campaign expenditure and in-kind contribution reporting requirements contained within 11 C.F.R. part 104 are derived.

the course of an FEC investigation only where the FEC's assertion of jurisdiction over the violation alleged is novel, see *MNPL*, 655 F.2d 380, or where the press exemption to the FECA's reporting requirements is at issue. See *Reader's Digest Association v. Federal Election Commission*, 509 F.Supp. 1210 (S.D.N.Y.1981). Where judicial review was sought to test the factual sufficiency underlying a reason to believe finding, it was denied. See *Spannaus v. Federal Election Commission*, 641 F.Supp. 1520, 1529–30 (S.D.N.Y. 1986), aff'd mem., 816 F.2d 670 (2d Cir. 1987). See also *EEOC v. Shell Oil*, 466 U.S. at 94, 104 S.Ct. at 1644 (the accuracy or reasonableness of a discrimination charge before the EEOC is not a justiciable issue at the investigatory stage) (O'Conner, J., concurring in part and dissenting in part). The case upon which Franklin primarily relies, *In re Federal Election Campaign Act Litigation*, 474 F.Supp. 1044 (D.D.C.1979), is not appositive. In that case, the court reviewed the FEC's dismissal of 45 complaints which the complainant had filed with the FEC. The FEC's decision not to investigate the allegations contained in those complaints, reflected in their dismissal, was a final agency action properly subject to judicial review. Here, in contrast, the investigation has not even truly begun.

In this matter, the FEC's jurisdiction over violations of the FECA's in-kind contribution reporting requirements is not novel. There is no suggestion in the record that the press exemption is at issue. While all restraints on political activity present first amendment concerns, those concerns do not automatically override either the substantive requirements of the FECA or FEC investigation into allegations of possible FECA violations. Franklin has not demonstrated any injury or hardship to either the unknown respondent or to himself should the FEC's investigation continue. Accordingly, Franklin's request for judicial review of the FEC's reason to believe finding is premature and encompasses other arguments keyed to separation of powers.

### E. *Attorney–Client Privilege*

■ Franklin invoked the attorney-client privilege concerning the identity of his client and the purpose of the Senator Robb investigation in his responses to the FEC interrogatories.

In addition to being a private investigator, Franklin is an attorney duly licensed to practice law in the Commonwealth of Virginia. The mere fact that Franklin is a lawyer, however, does not create a privileged relationship between his client in the Robb investigation and himself. See *United States v. Tedder*, 801 F.2d 1437, 1443 (4th Cir.1986), cert. denied, 480 U.S. 938, 107 S.Ct. 1585, 94 L.Ed.2d 775 (1987). One definition of the attorney-client privilege approved by the Fourth Circuit holds that the privilege exists:

(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*Id.* 801 F.2d at 1441 (quoting 8 Wigmore, Evidence § 2292 McNaughton rev. 1981 and *NLRB v. Harvey*, 349 F.2d 900, 904 (4th Cir.1965)).

While Franklin has established that he is an attorney and that his client in the Senator Robb investigation requested him to invoke the attorney-client privilege, Franklin has not discharged his burden, see *United States v. Under Seal*, 748 F.2d 871, 876 (4th Cir.1984), of providing sufficient information to enable the Court to determine privilege. Franklin has not demonstrated that the client retained him in his capacity as an attorney or that Franklin provided legal advice to the client relating to Franklin's investigation.

### F. *Confidentiality of Responses*

■ Section 437g(a)(12) provides that:

(A) Any ... investigation made under this section shall not be made public by the Commission or by any person without the written consent of the ... person

with respect to whom such investigation is made.

(B) Any member or employee of the Commission, or any other person, who violates the provisions of subparagraph (A) shall be fined not more than $2,000. Any such member, employee, or other person who knowingly and willfully violates the provisions of subparagraph (A) shall be fined not more than $5,000.

2 U.S.C.A. § 437g(a)(12) (1985).

Section 437g(a)(12) evinces congressional protection of the privacy interests of the "unknown client." While the FEC's investigation could establish that the investigation into Senator Robb's alleged activities was election related, it could also establish that the investigation was not related to the 1988 Senate race in Virginia or to any other federal election. Unless and until formal enforcement action in this matter is necessary or Franklin's employer waives confidentiality in writing, no one other than a member or employee of the FEC with a need to know is entitled to know the identity of Franklin's client. Accordingly, pursuant to sections 437g(a)(12)(A) and 437d(b), the Court is ordering, upon pain of contempt, that no member or employee of the FEC, or any other person, disclose to any person who is not a member or an employee of the FEC with a need to know the identity of Franklin's client in the Senator Robb investigation.

### G. *Conclusion and Order*

For the reasons discussed above, the following is hereby ORDERED:

1. William Franklin, a/k/a Billy A. Franklin, is to provide to the FEC, in writing, full and complete answers to the extent of his knowledge to each and every question propounded to him by order dated October 28, 1988 and signed by Thomas J. Josefiak, Chairman, FEC. The answers to those questions are to be provided to the FEC within seventy-five (75) days of the date of this order if no appeal is taken by either party in this matter, or if an appeal is taken by either party, within thirty (30) days of any mandate affirming this portion of the order, unless directed otherwise by the Court of Appeals.

2. No member or employee of the FEC, or any other person, may disclose to any person who is not a member or employee of the FEC with a need to know the identity of William Franklin's client in the Senator Robb investigation until such time as a formal enforcement action in this matter is commenced, Franklin's client waives confidentiality in writing, or disclosure is mandated by operation of law.

The Clerk is DIRECTED to send a copy of this opinion and order to FEC Chair Danny L. McDonald, Vice–Chair Lee Ann Elliott, Commissioners Joan D. Aikens, Thomas J. Josefiak, John Warren McGarry, and Scott E. Thomas, and to each counsel of record.

IT IS SO ORDERED.