[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 28, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-10270

_____

D. C. Docket No. 06-00358-CV-2-IPJ

INGRID REEVES,

Plaintiff-Appellant,

versus

C.H. ROBINSON WORLDWIDE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 28, 2008)

Before EDMONDSON, Chief Judge, WILSON, Circuit Judge, and ALTONAGA,[*]
District Judge.

WILSON, Circuit Judge:

_____

[*] Honorable Cecilia M. Altonaga, United States District Judge for the Southern District of
Florida, sitting by designation.

Ingrid Reeves appeals the entry of summary judgment in favor of C.H. Robinson Worldwide, Inc. ("CHRW") on her hostile work environment sexual harassment claim. We must determine whether daily exposure to language and radio programming that are particularly offensive to women but not targeted at the plaintiff are sufficient to satisfy the "based on" and "severe or pervasive" elements of a hostile work environment claim. Because Reeves satisfied the "based on" element and a jury could reasonably conclude that the conduct at issue was sufficiently pervasive to support a hostile work environment claim, we reverse the entry of summary judgment in CHRW's favor.

## I. BACKGROUND

In July 2001, Reeves began working as a Transportation Sales Representative ("TSR") in CHRW's Birmingham, Alabama branch office. She was the only female TSR in the office, and she worked in a workstation pod cubicle near other TSRs. Only one other woman worked at the Birmingham branch office, but her desk was not in Reeves's pod.

Reeves alleges that sexually offensive language permeated the work environment in her pod at CHRW every day. She testified in her deposition that from the summer of 2001 to the spring of 2004, she "could point at every day of the year that some of this behavior went on. It went on every day." [Doc. 12-3: 7].

2

She asserts, moreover, that sexually explicit radio programming playing on a daily basis and her one-time exposure to a pornographic image of a woman on a co-worker's computer also support her claim. Reeves testified that the offensive language and radio programming continued even after she complained to co-workers and her supervisor on several occasions.

One of Reeves's co-workers frequently used sexually crude language that offended her. This employee "was consistent, [a]cross the board, day in and day out, in the sexually offensive language, phrases, jokes, songs, comments, remarks." [Doc. 12-2: 41]. He often used the phrase "fucking bitch" or "fucking whore" after hanging up the phone, [*id.* at 42, 50]; he once called the only other female employee in the office a "bitch" after she had left the room, and he once remarked that she had "a big ass." [*Id.* at 44]. Sexual jokes by this co-worker were also commonplace, including one for which the punch-line was "fuck your sister and your mother is a whore." [*Id.* at 49-50]. Finally, he once said, "she's a cunt," referring to a female. [Doc. 12-3: 10]. Reeves communicated to this co-worker on multiple occasions that the language made it difficult for her to work, but the employee did not change his behavior.

Another co-worker also offended Reeves when he used sexually crude language. Reeves overheard this employee talk about (1) "getting off" in reference

3

to masturbation, [*id.* at 1], (2) a song that referenced "women's teeth on a man's dick," [*id.*], and (3) an experience in a hotel with naked women, [*id.* at 1–2]. On the day before this co-worker's last day at the office, moreover, Reeves was told that she should bring earplugs to work the next day because the co-worker had said that he could behave however he wanted on his last day. [*Id.* at 1]. Reeves testified that the co-worker's last day "was just like any other day: full of sexually offensive remarks, comments, stories, conversation, language—just like any other day . . . ." [*Id.*].

The branch manager, who was Reeves's direct supervisor, also made comments that offended Reeves. He once referred to a former female co-worker as a "lazy, good-for-nothing bitch," [Doc. 12-2: 52], and another time asked Reeves to "talk to that stupid bitch on line four," referring to a female customer. [Doc. 12-3: 5]. He once said, referring to the only female employee other than Reeves, "[s]he may be a bitch, but she can read," [Doc. 12-2: 167], and on another occasion said "[s]he's got a big one," [*id.*], referring to her buttocks. Reeves often complained to the branch manager about both his use of offensive language and the use of such language in the office generally.

Reeves was also offended by a radio program that was played every morning on the stereo in the office. Discussions of the following material on the show

4

offended her: (1) breast size of female celebrities and Playboy Playmates; (2) sexual arousal and women's nipples as indications thereof; (3) masturbation, both in general and with animals; (4) erotic dreams; (5) ejaculation; and (6) female pornography. [*Id.* at 14–18]. Advertisements for or including the following material that were aired during the program also offended her: (1) sexual favors; (2) a bikini contest that instructed women to wear their most perverse bikinis; (3) a statement that a woman was found in bed with three elves and a candy cane; and (4) a drug called Proton that promised to increase sexual performance, please a partner, and make the user a "sexual tyrannosaurus rex." [*Id.* at 19-21]. When Reeves complained about the radio programming, she was often told that she could play her own music or change the station. She testified, however, that if she did so the other employees would soon change the radio back to the offensive program.

The branch manager testified in his deposition that he had used, and heard others use, the term "bitch" in the office. He could not recall hearing anyone in the office use "whore" in a sexual context. He denied hearing any employee use the word "cunt" but estimated that the word "dick" was used about once a week. He also testified that he had one or two talks with one of Reeves's co-workers about language, and mentioned language to others during performance evaluations after Reeves complained.

Reeves resigned from CHRW on March 24, 2004. In February 2006, she filed a complaint against CHRW alleging in part that the use of sexually offensive language created a hostile work environment in violation of Title VII. The district court entered summary judgment for CHRW on the ground that the alleged harassment was not "based on" Reeves's sex.

On appeal, Reeves asserts that, contrary to the district court's reasoning, whether the allegedly harassing language was directed at the plaintiff is not determinative of whether the plaintiff was subjected to a hostile work environment. CHRW argues that we should affirm the district court because men and women were subjected to the same behavior in the office. Alternatively, CHRW argues that this Court should affirm on the ground that the harassment was not severe or pervasive.

## II. STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party. *Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1349 (11th Cir. 2007). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c). The party opposing summary judgment must make "enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### III. DISCUSSION

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." *Id.* § 2000e-2(a)(1). The ground for a Title VII sexual harassment claim can be either a tangible employment action or, as Reeves asserts here, the "creation of a hostile work environment caused by sexual harassment that is sufficiently severe or pervasive to alter the terms and conditions of work." *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1300 (11th Cir.), *cert. denied*, — U.S. —, 128 S. Ct. 499, — L. Ed. 2d. — (2007). An employee cannot recover under the hostile work environment theory unless she shows that (1) she belongs to a protected group; (2) she has been subject to unwelcome sexual harassment; (3) the harassment was based on her membership in a protected group; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment; and (5) a basis for holding the employer liable exists. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc). The only elements at issue here are the

7

"based on" and "severe or pervasive" elements.

A.  "Based on"

The Supreme Court has declared that in hostile work environment cases, "'[t]he critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 1002, 140 L. Ed. 2d 201 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25, 114 S. Ct. 367, 372, 126 L. Ed. 2d 295 (1993) (Ginsburg, J., concurring)).  Thus, to satisfy the "based on" element, a plaintiff must essentially show "'that similarly situated persons not of [her] sex were treated differently and better.'" *Baldwin*, 480 F.3d at 1302 (alteration in original) (quoting *Mendoza*, 195 F.3d at 1254 n.3 (Edmondson, J., concurring)).

The specific question that faces us here is whether harassment in the form of offensive language can be "based on" the plaintiff's membership in a protected group even when the plaintiff was not the target of the language and other employees were equally exposed to the language.  We noted in *Baldwin* that "sex specific" profanity, including words such as "bitch," "tramp," and "slut," is "more degrading to women than to men" and thus "may be considered, for whatever

8

weight [it has] on the sexual harassment scales." *Id*. at 1302.[1] Though we have never explicitly held that such "sex specific" language satisfies the "based on" element in a sexual harassment hostile work environment case even when the language does not target the plaintiff, we do so today in light of our race-discrimination cases.

It is well established that racially offensive language need not be targeted at the plaintiff in order to support a Title VII hostile work environment claim. For example, in *Walker v. Ford Motor Co.*, 684 F.2d 1355 (11th Cir. 1982), the plaintiff, a black male, who had just begun working as a trainee at a car dealership, claimed that other employees repeatedly used offensive racial epithets, including references to poorly repaired cars as "nigger-rigged" and to the salesman with the lowest sales volume as "the black ass." *Id*. at 1358. We concluded that the fact that many of the epithets were not directed at Walker was not determinative because the offensive language was often used in Walker's presence after he had voiced objections. *Id*. at 1359 n.2.[2] The harassment that Walker experienced was

---

[1] The district court did not have the benefit of this reasoning from *Baldwin* because it entered summary judgment for CHRW before we decided *Baldwin*.

[2] Similarly, in *Rogers v. E.E.O.C.*, 454 F.2d 234, 236 (5th Cir. 1972), *disapproved of on other grounds*, *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 104 S. Ct. 1621, 80 L. Ed. 2d 41 (1984), the former Fifth Circuit considered an optometrist employee's Title VII claim based on the employer's segregation of patients from a minority group of which the employee was a member. *Id.* The Court declared that the employer's failure to intentionally direct any discriminatory treatment toward the employee was "not material." *Id.* at 239. *See also*, *Busby v. City of*

"based on" his race because the "race specific" language that was used was particularly offensive to him as a black male, regardless of whom the language targeted.[3]

Our *Walker* reasoning can correctly be extended here. The language in the CHRW office included the "sex specific" words "bitch," "whore," and "cunt" that, under *Baldwin*, may be more degrading to women than men. The subject matter of the conversations and jokes that allegedly permeated the office on a daily basis included male and female sexual anatomy, masturbation, and female pornography, all of which was discussed in a manner that was similarly more degrading to women than men. The radio programming that Reeves claims was also similar. Therefore, even if such language was used indiscriminately in the office such that men and women were equally exposed to the language, the language had a discriminatory effect on Reeves because of its degrading nature. Accordingly, just as the language in *Walker* was sufficient to support Walker's hostile work

*Orlando*, 931 F.2d 764, 785 (11th Cir. 1991) (per curiam) (reiterating the *Walker* principle).

[3] Our sister circuits have also recognized the importance of this principle, for both the "based on" and "severe or pervasive" elements, and in both the race- and sex-discrimination contexts. *See, e.g.*, *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 695 (4th Cir.) (en banc) ("[S]exually charged comments . . . even if not directed specifically to the plaintiff, are relevant to determining whether the plaintiff was subjected to sex-based harassment."), *cert. denied*, — U.S. —, 128 S. Ct. 247, — L. Ed. 2d — (2007); *Jackson v. Quanex Corp.*, 191 F.3d 647, 660 (6th Cir. 1999) ("[O]ffensive comments need not be directed at a plaintiff in order to constitute conduct violating Title VII."); *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033–34 (9th Cir. 1998) (citing *Walker* for the proposition that "racist attacks need not be directed at the complainant in order to create a hostile . . . environment").

10

environment claim because it particularly offended Walker as a black man, we hold that the evidence Reeves presented was sufficient to survive summary judgment on the "based on" element here.

CHRW argues that we should not look to race cases here because, "race is different" than sex. In the Title VII context, however, CHRW's argument is simply misplaced. We have made it abundantly clear that

> [s]exual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets.

*Henson v. City of Dundee*, 682 F.2d 897, 902 (11th Cir. 1982). The Supreme Court, moreover, drew upon race discrimination cases when it held that Title VII covered hostile work environment claims and has "followed the lead of such cases in attempting to define the severity of the offensive conditions necessary to constitute actionable sex discrimination under the statute." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998). Additionally, the Supreme Court has noted that it is proper for us as we decide sexual harassment cases to draw "on standards developed in cases involving racial harassment." *Id.* at 787 n.2, 118 S. Ct. at 2283 n.2. Accordingly, we see no reason

11

to analyze the "based on" element differently here than we would in a race discrimination case.

Having concluded that Reeves satisfied the "based on" element, we turn to the "severe or pervasive" element.

B.  "Severe or Pervasive"

CHRW argues that even if the harassment was "based on" Reeves's sex, summary judgment was appropriate because, as a matter of law, the harassment was not sufficiently severe or pervasive to alter the terms and conditions of Reeves's employment.  We disagree.

The "severe or pervasive" element "tests the mettle of most sexual harassment claims."  *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000).  Thus, when properly applied, this element will "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."  *Faragher*, 524 U.S. at 788, 118 S. Ct. at 2284 (internal quotation marks omitted).  The element is only satisfied, moreover, "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult."  *Harris*, 510 U.S. at 21, 114 S. Ct. at 370.

The "severe or pervasive" element "includes a subjective and an objective component."  *Mendoza*, 195 F.3d at 1246.  We have no doubt that Reeves

12

subjectively perceived the harassment to be sufficiently severe or pervasive to violate Title VII. The question before us is whether that perception was objectively unreasonable as a matter of law such that the district court appropriately entered summary judgment in CHRW's favor.

We must judge the objective severity of the harassment from the perspective of a reasonable person in Reeves's position, considering the totality of the circumstances rather than acts in isolation. *Id.* As we have recognized, this inquiry is somewhat fact-intensive, *id.*, but the Supreme Court has identified the following four factors to guide us in our analysis: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Faragher*, 524 U.S. at 787–88, 118 S. Ct. at 2283. Importantly, no single factor is determinative, *Harris*, 510 U.S. at 23, 114 S. Ct. at 371, and *either* severity *or* pervasiveness can satisfy the element, if sufficient. *See Mendoza*, 195 F.3d at 1247–48.[4]

---

[4] Again, our sister circuits agree with us concerning this proposition. *See, e.g.*, *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007) ("Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment."); *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (recognizing that the test is for "quality *or* quantity" of harassment (emphasis added) (internal quotation marks omitted)); *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002) ("[A] sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute." (citation omitted)); *Bowen v. Missouri Dep't*

13

*1. Frequency*

For nearly three years, CHRW employees allegedly used "sex specific" language in Reeves's presence every day and the offensive radio program was played every morning. The frequency factor thus undoubtedly weighs in Reeves's favor.

*2. Severity*

As for severity, the words and phrases that were used fall variously on the spectrum of language that is particularly offensive to women. Rather than consider the severity of each instance of alleged harassment, however, we must determine the severity of all the circumstances taken together. It is arguably severe for the sole woman in a workplace to be exposed to: (1) the words "cunt" and "whore;" (2) vulgar references to sexual acts such as "a woman's teeth on a man's dick" and "fuck your sister;" and (3) conversations concerning ejaculation, men's erotic dreams, female sexual anatomy, sources and indications of female sexual arousal, and female pornography. Because the alleged conduct was never directed at Reeves, however, we cannot say that the nature of the overall harassment here was as objectively severe as the conduct that we and our sister circuits have previously

---

*of Soc. Servs.*, 311 F.3d 878, 884 (8th Cir. 2002) ("A claimant need only establish discriminatory conduct which is either pervasive or severe."); *Smith v. Norwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1413 (10th Cir. 1997) ("The [Supreme Court's] test is a disjunctive one, requiring that the harassing conduct be sufficiently pervasive *or* sufficiently severe . . . .").

14

deemed actionable under the severity factor. *See Mendoza*, 195 F.3d at 1246–52.

Accordingly, we conclude that, while it is not determinative,[5] the severity factor

weighs against Reeves.

### 3. *Physically Threatening or Humiliating*

Nothing occurred in the office that was physically threatening.[6]

Nevertheless, a jury could find that the language and radio programming created an

objectively humiliating work environment, particularly because Reeves was the

only woman in the workstation pod. Given the conduct described in our discussion

of the severity factor, it is objectively reasonable that a woman in Reeves's

position would have felt humiliated in such circumstances. Reeves's exposure to

the pornographic image on her co-worker's computer also contributed to the

objectively humiliating environment.

The humiliating atmosphere is further revealed in the warning that Reeves

received from a co-worker who used offensive language concerning another

---

[5] Our reasoning in *Walker* makes clear that whether offensive language is directed at the plaintiff is not determinative, even in the "severe or pervasive" analysis. *See Walker*, 684 F.3d at 1358, 1359 n.2; *see also*, cases cited *supra*, note 3.

[6] Because this factor requires that we consider whether the harassing conduct was physically threatening *or* humiliating, we agree with the Fourth Circuit that the absence of physical threats "is in no way dispositive, when there is sufficient evidence from which a reasonable jury could conclude that allegedly harassing conduct was otherwise humiliating." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 298–99 n.6 (4th Cir. 2004) (internal quotation marks omitted).

offensive co-worker's last day of work. The earplugs comment suggests that those who used derogatory language in the office knew that their conduct made Reeves uncomfortable, and perhaps even intended to do so. It is certainly reasonable that such treatment would be humiliating for a woman in Reeves's position. Accordingly, this factor weighs in Reeves's favor, despite the lack of physically threatening conduct.

### 4. *Unreasonable Interference with Job Performance*

Finally, we believe that a jury could properly conclude that the conduct unreasonably interfered with Reeves's job performance. CHRW argues that this factor should weigh in its favor because Reeves received positive performance reviews and was given significant responsibilities. As the Supreme Court declared in *Harris*, however, the conduct in question need not have tangibly affected the plaintiff's job performance in order to be actionable. *Harris*, 510 U.S. at 22, 114 S. Ct. at 371. Reeves testified that the conduct made it difficult to concentrate on work and caused her to leave the pod and stand in the hallway. She claims that she started to shake when she saw the pornographic image on her co-worker's computer. She also often took time away from her work to complain to her superiors, ask her co-workers to stop, or write notes to herself so she would have a record of some of the more offensive incidents. This factor, therefore, also weighs

16

in Reeves's favor.

### 5. *Our "Severe or Pervasive" Determination*

After considering the Supreme Court's four factors in light of the totality of the circumstances in which Reeves worked at CHRW, we hold that a reasonable jury could find that the harassment Reeves faced was sufficiently pervasive to alter the conditions of her employment. We agree with the Sixth Circuit that "a work environment viewed as a whole may satisfy the legal definition of an abusive work environment, for purposes of a hostile environment claim, even though no single episode crosses the Title VII threshold." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 564 (6th Cir. 1999). Reeves has presented evidence of sufficient pervasiveness to survive summary judgment, even if none of the incidents she has described, standing alone, would be actionable. Accordingly, this case can only be appropriately resolved after a jury weighs the factors and decides whether the harassment was such that a reasonable person would have felt that it affected the conditions of her employment.

We recognize that the conduct at issue here is not what typically comes to mind when one thinks of sexual harassment under Title VII. We were careful in *Mendoza*, moreover, not to "establish a baseline of actionable conduct that is far below that established by other circuits," *Mendoza*, 195 F.3d at 1251, or "trivialize

17

true instances of sexual harassment." *Id.* at 1252 n.10. Furthermore, summary judgment is meant to "police [that] baseline for hostile environment claims." *Id.* at 1244. Nevertheless, what Reeves experienced at CHRW was not the "ordinary socializing," *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998, 1003, 140 L. Ed. 2d 201 (1998), or "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" that the "severe or pervasive" element is meant to filter out. *Faragher*, 524 U.S. at 788, 118 S. Ct. at 2284.

As we mentioned earlier, *either* severity *or* pervasiveness can form the basis of a hostile work environment claim, and our holding today focuses on the latter. While it would be impossible to find a prior case that perfectly supports our reasoning, two of our sister circuits have held that similar facts satisfied the "severe or pervasive" element on pervasiveness specifically.

In *Lauderdale v. Texas Dep't of Criminal Justice*, No. 06-41636, 2007 WL 4465204, at *1 (5th Cir. December 21, 2007), the Fifth Circuit recently held that evidence of frequent but non-severe harassment was sufficiently pervasive to survive summary judgment. The relevant harassment in *Lauderdale* consisted of multiple nightly phone calls from the plaintiff's supervisor for nearly four months.[7]

---

[7] The plaintiff also alleged other instances of harassment, but the Court did not consider those in its pervasiveness analysis. *Lauderdale*, 2007 WL 4465204 at *3.

18

*Id.* at *3. While the calls clearly indicated the supervisor's romantic interest in the plaintiff, the call that was most sexual in nature merely invited the plaintiff to travel to Las Vegas with the supervisor and "snuggle." *Id.* In reversing the district court's entry of summary judgment, the Fifth Circuit panel declared that frequent harassment can be sufficiently pervasive to create a hostile work environment even if the individual incidents of harassment are "not severe." *Id.*

In *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027 (9th Cir. 2005), the Ninth Circuit reached a similar conclusion when it was faced with evidence of pervasiveness. The plaintiff testified that her supervisor told sexually explicit jokes "like every day," *id.* at 1035 (internal quotation marks omitted), and that she "could write a book" about all the times her supervisor had said that he did not think the plaintiff, or a female generally, could do the work that a man is required to do. *Id.* (internal quotation marks omitted). The Ninth Circuit panel held that the evidence of sexually explicit jokes and demeaning comments was "more than sufficient" to create "genuine factual disputes . . . as to *both* the severity and pervasiveness of [the supervisor's] conduct." *Id.* (emphasis added).

Just as the plaintiffs did in *Lauderdale* and *Dominguez-Curry*, Reeves has presented evidence of pervasive conduct that is sufficient to survive summary judgment.

19

## IV.  CONCLUSION

The evidence that Reeves presented prevents us from holding that, as a matter of law, the conduct in question did not satisfy the "based on" or "severe or pervasive" elements of a hostile work environment claim.  The entry of summary judgment in CHRW's favor is thus reversed, and the case is remanded for further proceedings.

**REVERSED AND REMANDED.**