[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 26, 2009
THOMAS K. KAHN
CLERK

No. 08-13998
Non-Argument Calendar

_____

D. C. Docket No. 07-00797-CV-T-24MSS

LATRECE LOCKETT,

Plaintiff-Appellant,

versus

CHOICE HOTELS INTERNATIONAL, INC.,
d.b.a. Clarion Hotel, et al.,

Defendants,

U.S. CONSOLIDATED RESOURCES, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 26, 2009)**

Before BIRCH, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Latrece Lockett ("Lockett") appeals from an order granting summary judgment for her employer, U.S. Consolidated Resources, LLC, ("USCR"), on her sexual harassment claims under Title VII, 42 U.S.C. § 2000e-2(a), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01-760.11, as well as her claims of retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a), the FCRA, and the Florida Whistleblower Act, Fla. Stat. § 448.101 et seq.[1] After careful consideration of the entire record, we AFFIRM.

## I. BACKGROUND

We state the facts in the light most favorable to Lockett. USCR employed Lockett at the Clarion Hotel in Tampa, Florida from August 2005 until 22 August 2006. R1-2 at 2; R1-24 at 113. Lockett first met Eric Watson when he began working at the hotel café with her. R1-24 at 27. Watson acted politely and cordially during this time, and they had a friendly relationship. Id. at 27-28, 58. After Lockett transferred to the reservations department in April 2006, Watson began making sexual comments to her when she visited the café during her breaks.

---

[1]Two other defendants, Choice Hotels International, Inc., d/b/a Clarion Hotel, and Advantage Employer Solutions, Inc., were dismissed with prejudice during the district court proceedings. R1-19, 36.

Id. at 28-31, 66-67. For instance, Watson would talk about sexual positions, that he would lick her "p-u-s-s-y", that "he would go down on [her] good," that her boyfriend "ain't F'ing [her] right," and that she needed "to get with a real guy." Id. at 33-34. Watson also stuck out his tongue two or three times. Id. at 115. As a result, Lockett stopped going to the café for about three weeks. Id. at 36. When she returned to the café, Watson wanted to hug her but she refused. Id. at 38. Lockett testified that on another occasion Watson touched her bottom quickly. Id. at 39.

Lockett initially complained to Flavian Gomez ("Gomez"), the café manager and Watson's supervisor. Id. at 34, 40. Gomez told Lockett that he spoke to Watson but Watson's behavior continued. Id. at 40. Sometime in August 2006, Lockett reported Watson to her supervisor's manager, Debbie Mangual ("Mangual"). Id. at 19, 41, 70. Mangual informed Gomez of Lockett's complaints and Gomez indicated he would speak with Watson. R1-30, Exh. 2 at 18-19.

Several weeks later, Lockett told Mangual that Watson was still acting inappropriately. Id. at 14-15, 18; R1-24 at 45-46. Mangual immediately notified the human resources liason, Jacqueline Gregory ("Gregory"). R1-25 at 4, 26, 31-32. That same day, Gregory met with Lockett to discuss Watson's behavior. R1-24 at 46. Afterwards, a meeting occurred involving Gregory, Watson, Mangual

3

and Lockett. Id. at 48. According to Lockett, Watson "admitted to everything" and also attacked her character, calling her a "ho" and a "bitch." Id. at 48-49. At one point, Lockett said Watson "jumped in my face and acted like he was going to hit me." Id. at 51. Lockett responded to Watson, "I have a boyfriend for you." Id. at 52. The meeting ended shortly thereafter. Id. at 54.

Watson then returned to the front desk and made derogatory comments about Lockett as well as divulged personal information about her sex life. Id. at 54-55; R1-30, Exh. 2 at 28-31. After Mangual informed Watson's supervisor, Gomez, about Watson's statements at the meeting and the front desk, Gomez terminated Watson. R1-30, Exh. 2 at 31. Mangual also told Lockett that she was terminating her for threatening Watson. Id. at 10-12, 31; R1-24 at 56; R1-25 at 85.

USCR has a written policy forbidding sexual harassment in the workplace, which instructs employees to notify their supervisor promptly after any incident of sexual harassment. R1-27 at 10-11. In addition, USCR's policy prohibits "threats of violence" and "disorderly conduct and obscene and/or abusive language." Id. at 9. Similarly, an employee may be discharged for "offensive or threatening conduct or language" towards fellow employees. Id. at 9-10. Lockett admitted

that she read and understood this document before signing it. R1-24 at 70, 110-12.

The district court granted summary judgment in favor of USCR on all counts of Lockett's complaint. R1-32 at 12. With respect to Lockett's sexual harassment claims under Title VII and the FRCA, the district court found that Lockett failed to produce sufficient evidence of a hostile work environment because the only subjective evidence was her avoidance of the café for three weeks, after which she resumed her visits. Id. at 6-7. From an objective standpoint, the court found that Watson's comments, although offensive, were not severe, physically threatening, or humiliating. Id. at 7. Additionally, the court noted that Watson's conduct in the café never interfered with Lockett's job performance in the reservations area. Id. The district court further concluded that USCR appropriately and promptly responded to Lockett's complaint, which precluded liability for Watson's actions. Id. at 9.

As for Lockett's retaliation and whistleblower claims, the court found that the undisputed evidence showed that USCR legitimately terminated Lockett based on its belief that Lockett had threatened Watson. Id. at 10-11. Further, the court found no contrary evidence showing that USCR's proffered reason for termination was a pretext for a retaliatory decision. Id. at 11-12. Accordingly, the court

granted summary judgment on Lockett's claims for retaliation and whistleblower act violations. Id. at 12.

Lockett now appeals the district court's grant of summary judgment as to all of her claims. She contends that Watson's harassment was sufficiently severe or pervasive to create a hostile working environment because it occurred almost daily for several months and was demeaning, offensive and humiliating. Lockett further argues that USCR's response to her reports of sexual harassment were ineffective and inappropriate. With respect to her claims of retaliation, Lockett hypothesizes that Mangual's true reason for firing her was that Mangual's mishandling of her harassment claims made Mangual look like a poor manager.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo, viewing all evidence in the nonmoving party's favor. See Reeves v. C.H. Robinson Worldwide, Inc., 525 F.3d 1139, 1143 (11th Cir. 2008). Summary judgment is proper if the pleadings, discovery materials, and any affidavits "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A.  Sexual Harassment Claims

Both Title VII and the FRCA prohibit employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1); Fla. Stat. § 760.10(1)(a).  Because the FCRA is patterned after Title VII, courts generally apply Title VII case law to discrimination claims brought under the FCRA.  See Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1195 n.1 (11th Cir. 2004).  Accordingly, like the district court, we will not independently analyze Lockett's FRCA claims.

An employer violates Title VII when it creates "a hostile work environment caused by sexual harassment that is sufficiently severe or pervasive to alter the terms and conditions of work."  Reeves, 525 F.3d at 1143 (quotation marks and citation omitted).  To establish sexual harassment under Title VII, Lockett must show that:

> (1) she belongs to a protected group; (2) she has been subject to unwelcome sexual harassment; (3) the harassment was based on her membership in a protected group; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment; and (5) a basis for holding the employer liable exists.

Id.  Here, only the fourth and fifth elements are in dispute.

7

1. Severity or Pervasiveness

In relation to the fourth element, Title VII does not serve as a "general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84 (1998) (quotation marks and citation omitted). "[S]imple teasing . . . offhand comments, and isolated incidents (unless extremely serious)" do not constitute a hostile work environment. Id. at 788, 118 S. Ct. at 2283 (quotation marks and citations omitted). Instead, this element is only satisfied "'[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult.'" Reeves, 525 F.3d at 1145 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)).

A court must first consider whether the plaintiff subjectively perceived the harassment to be severe or pervasive. See id. The court next determines whether that perception is objectively reasonable. See id. This requires the court to view all the circumstances, not just isolated acts. See id. Relevant factors for consideration include "(1) the frequency of the [discriminatory] conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's job performance." Id. at 1145-46.

Considering the totality of the circumstances, we conclude that there was no genuine issue of material fact that Watson's alleged harassment did not create a hostile working environment. With respect to Lockett's subjective beliefs, she admitted in her deposition that she and Watson had a friendly relationship. R1-24 at 57-58. Lockett's direct supervisor, Geneva Williams, testified that Lockett never complained to her about Watson until the day she was fired. R1-26 at 25. Furthermore, during the alleged period of harassment, Lockett only stopped using the café for three weeks and she never sought medical treatment or counseling because of Watson's behavior. R1-24 at 36, 71. It was only after her termination that Lockett talked with a counselor because she did not think she deserved to be fired, not because she was disturbed by Watson's conduct. Id. at 71, 117-18. Although concrete psychological harm is not required, "[t]he effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive." Harris, 510 U.S. at 23, 114 S. Ct. at 371. This evidence does not support a subjective belief that Watson's conduct was so severe or pervasive that it created a hostile working environment.

Even assuming Lockett believed the alleged harassment created an abusive workplace, this perception would not be objectively reasonable. As for the first

9

Harris factor, frequency of the harassing conduct, Lockett testified that Watson harassed her every time she visited the café from April through 19 August 2006, excluding a three-week period when she chose not to go there. R1-24 at 31, 66-67. Lockett did not specify how many times she was at the café although she stated she generally ate her lunch there and sometimes took her shorter breaks there as well. Id. at 26-27. Drawing all inferences in Lockett's favor, the alleged harassment occurred for approximately four months. This is far shorter than the three years of daily harassing conduct which we found to be frequent in Reeves. See Reeves, 525 F.3d at 1146; but see Lauderdale v. Texas Dep't of Criminal Justice Inst'l Div., 512 F.3d 157, 164 (5th Cir. 2007) (concluding that ten to fifteen nightly phone calls for nearly four months from the plaintiff's supervisor amounted to pervasive harassment).

To the extent that Watson's conduct was frequent, this "does not compensate for the absence of the other factors." Mendoza v. Borden, Inc., 195 F.3d 1238, 1248 (11th Cir. 1999) (en banc). We agree with the district court that Watson's alleged conduct was offensive but "[did] not rise to the level of being severe, physically threatening, or humiliating." R1-32 at 7. Lockett does not argue that Watson's conduct was physically threatening but she contends that his comments were severe and humiliating. However, the alleged sexual remarks and

10

two incidents of brief touching fall below the minimum level of severity or humilation needed to establish sexual harassment. See Mendoza, 195 F.3d at 1246-47 (collecting cases setting standards for a Title VII sexual harassment violation). Thus, the second and third factors have not been met.

As for the fourth Harris factor, there is no evidence that Watson's conduct unreasonably interfered with Lockett's work performance. An abusive work environment can "detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." Harris, 510 U.S. at 22, 114 S. Ct. at 371. None of these elements are present here. Lockett admitted that Watson's conduct did not affect her work, that she felt she should not have been fired because she was a good worker, and that she received at least one pay raise during the time the harassment allegedly occurred. R1-24 at 106-107, 117-18. Lockett's direct supervisor, Geneva Williams, concurred that Lockett did a "good job." R1-26 at 8. Although a Title VII violation does not require that Lockett's job performance be tangibly affected, there is no evidence that Lockett's work performance suffered in any way whatsoever. Compare Reeves, 525 F.3d at 1147 (concluding that Reeves' job performance was affected because she had difficulty concentrating on her work and she often took time away from her work to deal with her co-workers' offensive conduct). The only change

11

in Lockett's working conditions stemmed from her decision not to eat at the café for three weeks. When viewed in context, this does not constitute unreasonable interference with Lockett's job performance.

In sum, we conclude that under the totality of the circumstances, there is no genuine factual issue that Watson's conduct was not severe or pervasive enough to create a hostile working environment. Accordingly, USCR was entitled to summary judgment on Lockett's claims of sexual harassment under Title VII and the FRCA.

2. Employer Liability

Summary judgment was also warranted based on the absence of employer liability in this case, which is the fifth and final requirement of a Title VII violation. See Reeves, 525 F.3d at 1143. Where the alleged sexual harassment is committed by a co-worker, as here, the employer is liable "if it knew or should have known of the harassing conduct but failed to take prompt remedial action." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1278 (11th Cir. 2002). Lockett submits that USCR's management did not take prompt remedial action but instead made the situation worse. We disagree.

First, Lockett contends that her complaint to Gomez, Watson's supervisor, brought no change. There is no evidence in the record as to how Gomez

responded because Lockett did not file Gomez's deposition transcript with the district court.[2]  Our review is limited to the evidence which the district court considered when it decided the motion for summary judgment.  See Chapman v. AI Transport, 229 F.3d 1012, 1026-27 (11th Cir. 2000) (en banc).  We therefore have no basis upon which to judge Gomez's actions.

Next, Lockett faults Mangual for not taking her complaint seriously or initially referring her to human resources.  However, Jacqueline Gregory, the human resources officer, testified that she expected managers to try to resolve any problems before contacting her.  R1-25 at 40.  This is exactly what Mangual did by informing Watson's supervisor of Lockett's complaint.  Nevertheless, Lockett asserts that this worsened the situation because Watson became angry when he heard about Lockett's complaints and Gomez allegedly gave Watson permission to confront her.  Again, we cannot review Gomez's alleged statements to Watson due to the absence of his deposition transcript.  The record reflects that Lockett never testified that Watson appeared angry or confronted her after she reported him to Mangual.  Additionally, Mangual stated that two days after Lockett reported the

---

[2]After Lockett filed her notice of appeal, she filed an unopposed motion to correct the record on appeal to include Gomez's deposition transcript.  R1-41.  The district court denied Lockett's motion on grounds that it would not accurately reflect what occurred in the district court.  R1-42.

harassment to her, Mangual saw Lockett and Watson talking and laughing with each other in the café. R1-30, Exh. 2 at 20-22. Mangual thus reasonably believed that the situation had been resolved. After Lockett reported to her several weeks later that Watson was still harassing her, Mangual immediately called the human resources officer to look into the matter. Accordingly, Lockett has failed to show that either Mangual or Gomez's actions were inappropriate.

Finally, Lockett takes issue with the meeting in Gregory's office that included herself, Watson, Mangual, and Gregory. Lockett contends that Gregory was untrained and inexperienced in sexual harassment matters and should not have put her in the same room with Watson. Mangual testified that the purpose of the meeting was to "find out exactly what was going on" because Lockett and Watson's behavior indicated they were friends. Id. at 41-42. The district court correctly concluded that the meeting was appropriate to investigate Lockett's allegations. Furthermore, USCR terminated Watson shortly after the meeting. "[W]here the substantive measures taken by the employer are sufficient to address the harassing behavior, complaints about the process under which those measures are adopted ring hollow." Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1288 (11th Cir. 2003) (per curiam). Accordingly, we agree with the district court that there is no genuine issue of material fact that USCR took prompt

14

remedial action and was therefore not liable for Watson's alleged harassment.

Based on the foregoing, we conclude that the district court correctly granted summary judgment on Lockett's claims for sexual harassment under Title VII and the FRCA.

B. Retaliation Claims

We turn now to Lockett's retaliation claims under Title VII, the FRCA, and the Florida Whistleblower Act that she was fired because she complained about Watson's sexual harassment. The law governing Title VII retaliation claims applies to similar charges under the FCRA and Florida Whistleblower Act. See Harper v. Blockbuster Entm't Corp.,139 F.3d 1385, 1389-90 (11th Cir. 1998); Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th Cir. 2000) (Florida Whistleblower Act case). Under Title VII, an employer may not retaliate against an employee for opposing an unlawful practice or engaging in protected conduct, including complaining about gender discrimination. See 42 U.S.C. § 2000e-3(a). Even though Lockett cannot prevail on her underlying discrimination claim, she may still establish a Title VII violation if she shows that her employer retaliated against her for complaining about Watson's putative sexual harassment. See Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999).

Once a Title VII plaintiff establishes a prima facie case of retaliation, the

15

employer must proffer a legitimate, non-retaliatory reason for the challenged action.  See Crawford v. City of Fairburn, GA, 482 F.3d 1305, 1308 (11th Cir. 2007).  If the employer does so, the plaintiff must rebut that reason with evidence showing that it is a pretext for illegal discrimination.  See id.  This requires "significant probative evidence" of pretext, not mere conclusory allegations.  Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996) (quotation marks and citation omitted).  Further, the focus is on the employer's beliefs rather than the employee's own perceptions.  See Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997) (per curiam).

USCR does not contest that Lockett established a prima facie case of retaliation and we will assume, without deciding, that Lockett has met her initial burden.  USCR's articulated reason for firing Lockett was that she had threatened Watson in violation of company policy.  This was a legitimate, non-discriminatory reason based on Lockett's admission that she told Watson, "I have a boyfriend for you."  R1-24 at 52.  The burden therefore shifted to Lockett to rebut this reason with substantive evidence of pretext.  See Crawford, 482 F.3d at 1308.  In her deposition, Lockett explained this statement was not intended as a threat but merely to let Watson know that "if you want to hit somebody, you could hit my boyfriend."  R1-24 at 117.  However, "what counts is not what [Lockett] believed

16

about her stated intent but what the decision maker at [USCR] believed." Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1308 (11th Cir. 2007). Here, the uncontroverted evidence is that Mangual believed Lockett had threatened Watson and fired her because of that threat.

On appeal, Lockett's sole argument of pretext is that Mangual was somehow attempting to camouflage her own mismanagement of Lockett's harassment complaints by firing Lockett. This argument is raised for the first time on appeal and "[a]s a general rule, we will not address claims or arguments not fairly presented to the district court." Chapman, 229 F.3d at 1032 (quotation marks and citation omitted). More importantly, this argument is purely speculative and unsubstantiated by any evidence. As such, it is insufficient proof that USCR's reason for Lockett's termination was pretextual. See Mayfield, 101 F.3d at 1376. Accordingly, we conclude that the district court correctly granted summary judgment on Lockett's federal and state claims of retaliation.

### III. CONCLUSION

USCR was entitled to summary judgment on Lockett's claims of sexual harassment and retaliation under Title VII, the FRCA, and the Florida Whistleblower Act. Summary judgment was warranted on Lockett's sexual harassment claims because there was no genuine factual issue that her co-worker's

17

conduct did not create a hostile working environment and that USCR responded to her complaints with prompt, remedial action.  Furthermore, Lockett did not present sufficient evidence of pretext to rebut USCR's legitimate reason for terminating her.  Her claims for retaliation therefore fail.  Accordingly, we AFFIRM the summary judgment for USCR on all grounds.

AFFIRMED.